UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| AKSHARBRAHMA CORP., D/B/A AMERICAN MOTOR INN, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:22-cv-04140-SLD-RLH ) ) |
| NAUTILUS INSURANCE COMPANY, | ) ) |
| Defendant. | ) ) |

ORDER

Before the Court is Defendant Nautilus Insurance Company's ("Nautilus") Rule 56

Motion for Summary Judgment, ECF No. 44. For the following reasons, the motion is

GRANTED.

BACKGROUND[1]

Plaintiff Aksharbrahma Corp., d/b/a American Motor Inn ("AMI"), owns and operates a

motel building in Rock Island, Illinois (the "Property"). AMI purchased an insurance policy

from Nautilus covering the Property for the period from July 15, 2020 to July 15, 2021 (the

"Policy"). The Policy covers certain damage to the Property and personal property. It also

covers costs incurred during the course of repair, rebuilding, or replacement if such costs were

incurred to comply with ordinances or laws. Under this provision (the "Additional Coverage

---

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nomovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The facts related here are, unless otherwise noted, taken from Nautilus's statement of undisputed material facts, Mem. Supp. Mot. Summ. J. 2–9, ECF No. 45; Plaintiff Aksharbrahma Corp., d/b/a American Motor Inn's ("AMI") response to Nautilus's statement of undisputed material facts, Resp. Mot. Summ. J. 4–16, ECF No. 52; AMI's statement of additional material facts, *id.* at 17–19; Nautilus's reply to AMI's additional material facts, Reply Supp. Mot. Summ. J. 1–11, ECF No. 53; and from the exhibits to the filings. Where the parties disagree about the facts, the Court views the evidence in the light most favorable to AMI and draws all reasonable inferences in its favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Provision"), Nautilus pays out the lesser of $10,000 or 5% of the applicable Limit of Insurance. The Additional Coverage Provision also provides that Nautilus will not pay those additional costs until the property is repaired or replaced and "[u]nless the repair or replacement is made as soon as possible after the loss or damage, *not to exceed two years*," with a possibility for an extension in writing made during that two-year period. Commercial Lines Policy 75,[2] Mem. Supp. Mot. Summ. J. Ex. A, ECF No. 45-1 (emphasis added).

The Policy contains an appraisal clause in the event the parties disagree about the extent of damage covered by the Policy or the amount owed under the Policy. It states:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
> If there is an appraisal, we will still retain our right to deny the claim.

*Id.* at 80.

In August 2020, a thunderstorm damaged the Property. AMI provided a notice of property damage following the storm. During the adjustment process, it was determined that an ice dam event that occurred in February 2021 caused additional damage to the Property. After the initial adjustment process, Nautilus tendered a check to AMI for $43,133.65 to cover damage from both events. On December 21, 2021, AMI attempted to invoke the appraisal clause because it disagreed about the amount of recoverable damage. It renewed this demand on May 31, 2022.

---

[2] The Policy contains many documents that are either unnumbered or individually paginated. For ease of reference, the Court uses the page numbers generated by CM/ECF for pincites.

Nautilus sent an additional payment of $25,306.58 following a second inspection and then agreed to AMI's demand for an appraisal on June 15, 2022.

In August 2022, AMI brought an action in Illinois state court. Compl. 1, Not. Removal Ex. B, ECF No. 1-2. The complaint asserted three counts against Nautilus, seeking (I) declaratory relief to appoint an umpire for the appraisal, (II) damages for breach of contract, and (III) damages under 215 ILCS 5/155 for vexatious refusal to settle. *Id.* at 4–6. The case was removed to this Court on September 27, 2022. Not. Removal, ECF No. 1. AMI filed an amended Count III of its complaint on October 19, 2022. Am. Count III, ECF No. 9.

On June 5, 2023, the parties signed a "Stipulation Regarding Loss Appraisal Protocol" (the "Protocol") purporting to govern the appraisal process. The Protocol provided requirements for the appraisal and post-appraisal process, including directing the appraisers to answer an enumerated set of questions.

On April 15, 2024, the appraisal panel issued an award for $163,317.13. One month later, Nautilus paid $93,876.90 to AMI, representing the amount of the appraisal award net the two prior payments and the $1,000 deductible set by the Policy.

On November 18, 2024, AMI informed Nautilus that it had completed roofing repairs on the Property. AMI requested recoverable depreciation and $10,000 pursuant to the Additional Coverage Provision. In response to this demand, Nautilus tendered a check for $36,558.98 to cover recoverable depreciation but stated that no payment was due under the Additional Coverage Provision.

On January 24, 2025, Nautilus filed a motion for summary judgment, claiming that its payment for recoverable depreciation discharged any remaining obligations created by the Policy and that, as a result, AMI cannot support any of its claims. Mem. Supp. Mot. Summ. J. 2, ECF

No. 45.  AMI maintains that summary judgment is inappropriate because Nautilus has

outstanding obligations created by the Protocol, because the appraisal award did not dispose of

Nautilus's contractual obligations, and because it is owed additional damages for vexatious

refusal to settle pursuant to 215 ILCS 5/155.  *See* Resp. Mot. Summ. J. 1–2, ECF No. 52.

## DISCUSSION

### I.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The purpose of summary judgment is to determine "whether there is the need for a trial,"

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), in other words, whether any genuine

factual issues exist for a finder of fact to decide.  At summary judgment, the court must

"construe the facts and draw all reasonable inferences in the light most favorable to the

nonmoving party."  *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).  But it need not

turn a blind eye to obvious factual conclusions.  *See Matsushita Elec. Indus. Co., v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule

56(c), its opponent must do more than simply show that there is some metaphysical doubt as to

the material facts." (footnote omitted)).  To prove that a fact is or cannot be genuinely disputed, a

party must "cit[e] to particular parts of materials in the record" or "show[] . . . that an adverse

party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

Genuinely disputed facts can only defeat summary judgment if they are material, that is, if given

resolution in the non-moving party's favor, "a reasonable jury could find for the party opposing

the motion."  *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999) (quotation marks

omitted).  "[A] complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Analysis

### a. Count I: Declaratory Relief

In Count I, AMI requests declaratory relief appointing an umpire so that the appraisal process can proceed. Compl. 4–5. Nautilus asks the Court to dismiss Count I because "the parties have now participated in the appraisal." Mem. Supp. Mot. Summ. J. 19. "AMI agrees Count I is moot." Resp. Mot. Summ. J. 3. As this part of the motion is unopposed, the Court GRANTS Nautilus's motion for summary judgment with respect to Count I for declaratory relief.

### b. Count II: Breach of Contract

In Count II, AMI seeks recovery for Nautilus's refusal to indemnify AMI for damage to its insured property in violation of the Policy. Compl. 5. Nautilus contends that its payment pursuant to the appraisal award discharged any remaining obligations under the Policy. Mem. Supp. Mot. Summ. J. 10–15. AMI disputes both the propriety and the sufficiency of the appraisal award. It claims that the appraisal award wrongly failed to adhere to the Protocol, meaning the appraisal award could not satisfy Nautilus's contractual obligations. *See* Resp. Mot. Summ. J. 21–26. AMI also claims entitlement to payment of up to $10,000 under the Policy's Additional Coverage Provision. *Id.* at 28–29.

#### i. The Stipulated Protocol

AMI argues that the Protocol modified the Policy such that failure to adhere to its terms constitutes a breach of contract. *Id.* at 21. Alleged breaches of the terms of the Protocol include failure to resolve all questions presented in Exhibit A to the Protocol, *id.* at 22, and failure to

consider damage to additional items not identifiable by visible inspection during the appraisal process, *id.* at 26. Nautilus does not seek to prove adherence to the terms of the Protocol. It instead argues that the Protocol did not modify the Policy and, additionally, that the Protocol never went into effect. Reply 10, ECF No. 53.

The Court only finds it necessary to address Nautilus's argument that the Protocol never became effective. Under the heading "Effective Date," the Stipulated Protocol states: "The Protocol shall become effective between AMI and Nautilus upon execution of the Protocol by AMI, Nautilus, and the parties' respective appraisers." Stipulated Protocol 7, Resp. Mot. Summ. J. Ex. 2, ECF No. 52-2.[3] Representatives of AMI and Nautilus signed the Protocol, as did AMI's Appraiser, *see id.* at 8–9, but Nautilus's Appraiser declined to sign or otherwise execute it, *see* Dep. Meredith Reschly 19:3–23, Resp. Mot. Summ. J. Ex. 4, ECF No. 52-4 (stating that Nautilus's appraiser "did not sign it" because the Protocol was "outside the scope and norm of an appraisal").

Contracts can be modified to introduce new terms. *See Urban Sites of Chi., LLC v. Crown Castle USA*, 979 N.E.2d 480, 493 (Ill. App. Ct. 2012) ("[P]arties to an existing contract may, by mutual assent, modify a contract provided that the modification does not violate the law or public policy."). The Protocol facially purports to do so. In it, the parties "stipulate[] and agree[] . . . that the following Stipulation (the 'Protocol') will govern the appraisal proceedings regarding loss suffered by real estate and improvements known as American Motor Inn . . . which occurred as a result of an August 10, 2020 storm and/or February 2021 ice dam event." Stipulated Protocol 2.

---

[3] Because there are two pages identified as page seven in the document's original pagination, the Court uses the page numbers generated by CM/ECF for its pin cites.

Putting aside whether the initial contract limits modifications, a modification is only valid if it "satisf[ies] all the criteria essential for a valid original contract." *Schwinder v. Austin Bank of Chi.*, 809 N.E.2d 180, 189 (Ill. Ct. App. 2004). Consequently, if the Protocol does not satisfy the criteria necessary for a contract to be formed, it could not have modified the Policy.

For a contract to be enforceable, any conditions precedent it establishes must be met. *See Cath. Charities of Archdiocese of Chi. v. Thorpe*, 741 N.E.2d 651, 653 (Ill. App. Ct. 2000) ("A condition precedent is one that must be met before a contract becomes effective or that is to be performed by one party to an existing contract before the other party is obligated to perform." (quotation marks omitted)); *accord McAnelly v. Graves*, 467 N.E.2d 377, 379 (Ill. App. Ct. 1984); *see also Dodson v. Nink*, 390 N.E.2d 546, 549 (Ill. App. Ct. 1979) ("It is well established that where a contract contains a condition precedent, the contract does not become enforceable or effective until the condition is performed or the contingency occurs.").

"When contracts contain express conditions precedent, strict compliance with such conditions is required." *Midwest Builder Distrib., Inc. v. Lord and Essex, Inc.*, 891 N.E.2d 1, 23 (Ill. App. Ct. 2007); *see also Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, 119 F.4th 522, 526 (7th Cir. 2024) ("Conditions precedent . . . are generally subject to strict compliance under Illinois contract law."). Substantial performance is not enough. *See Hardin, Rodriguez, & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 636 (7th Cir. 1992) ("If . . . the parties have made an event a condition of their agreement, there is no mitigating standard of materiality or substantiality applicable to the non-occurrence of that event." (quoting Restatement (Second) of Contracts § 237 cmt. d (A.L.I. 1981)). "Courts will enforce express conditions precedent despite the potential for harsh results for the noncomplying party . . . ." *Midwest Builder Distrib.*, 891 N.E.2d at 23.

7

Whether contractual language creates a condition precedent generally "depends upon the facts of the case." *McAnelly*, 467 N.E.2d at 379.  However, "[t]he intent of the parties to create a condition precedent to the formation of a contract is a question of law where the language in the instrument is unambiguous." *Cath. Charities*, 741 N.E.2d at 653.  A key question when considering whether contractual language unambiguously manifests an intent to create a condition precedent is whether the language of the condition is permissive or mandatory.  *See Assocs. Asset Mgmt., LLC v. Cruz*, 144 N.E.3d 169, 174 (Ill. App. Ct. 2019).  Mandatory language, such as "if," *id.*, or "shall," *Pro. Exec. Ctr. v. LaSalle Nat'l Bank*, 570 N.E.2d 366, 373 (Ill. App. Ct. 1991), creates a condition precedent.

In this case, the Effective Date provision in the Protocol creates a condition precedent to its enforcement.  The language it uses—"shall become effective . . . upon execution" of the parties and their appraisers, Stipulated Protocol 7—is mandatory, not permissive.  Further, its language closely mirrors that regularly found to be unambiguous by courts applying Illinois law.  In *Continental Casualty Co. v. Steelcase Inc.*, No. 02 C 8064, 2004 WL 1965699, at *6 (N.D. Ill. Aug. 23, 2004) (quotation marks omitted), the contract at issue stated that a price adjustment "will be in the form of a one-time refund to be paid upon execution of" a new agreement between the parties.  The court held that "the phrase 'upon execution of the . . . agreement . . . ' unambiguously signals the parties' intent to create a condition precedent." *Id.* at 8.  Similarly, in *Albrecht v. North American Life Assurance Co.*, 327 N.E.2d 317, 318 (Ill. App. Ct. 1975) (alteration in original), the court considered a group life insurance policy wherein an employee "shall become insured hereunder . . . on the date of completion of a written application for insurance or on the date on which he first becomes eligible, whichever is later."  The court held that "the wording used was clearly susceptible to only one logical interpretation" and that "the

8

requirement [to fill out an application] was a condition precedent." *Id.* at 319.  And a settlement agreement stating that it "will become binding and effective upon the exchange of facsimile or other electronic copies of the required signatures" has been found to "unambiguous[ly] and clearly indicate[] that the parties did not intend to be bound by any settlement agreement until signatures had been exchanged." *Solaia Tech. LLC v. ArvinMeritor, Inc.*, No. 02 C 4704, 2006 WL 695699, at *6 (N.D. Ill. Mar. 16, 2006) (quotation marks omitted).  In short, language stating that a contract will become effective upon the performance of an extrinsic act, such as the execution of an agreement, unambiguously shows that the parties intended to create a condition precedent.

Parties to a contract may condition their performance on the acceptance of terms by a third party.  In contracts to lease land, for example, parties may condition the obligation to perform on the later issuance of permits allowing the lessees to use the land for the intended purpose.  *See, e.g.*, *McAnelly*, 467 N.E.2d at 379–80 (giving effect to a lease provision conditioning payment on the receipt of mining permits).  Parties may also condition their obligation to perform on "approval by a court or commission." *Id.* at 379.  In the same way, AMI and Nautilus conditioned the enforcement of the Protocol on acceptance of its terms by their chosen appraisers.  As this condition was not met, the parties are not obligated to perform the obligations established by the Protocol, and its terms may not be enforced by this Court.

In conclusion, because a condition precedent to the formation of the contract failed, the Protocol never went into effect and does not contractually bind the parties.

### ii.  The Appraisal Award

Nautilus claims that the appraisal award discharged any outstanding payment owed under the terms of the Policy.  *See* Mem. Supp. Summ. J. 15 ("Through Nautilus' timely payment of

the Appraisal Award (after accounting for the deductible and its prior payments), AMI has received the full extent of all recoverable benefits under the . . . Policy as determined by the Appraisal Panel."). The appraisal provision for the Building and Personal Property Coverage Form states: "If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss." Commercial Lines Policy 80. In that event, each party would select an appraiser, who in turn would select an umpire. *Id.* "A decision agreed to any two will be binding." *Id.* AMI does not contest that the insurance contract intended the appraisal process to definitively determine the value of property damage sustained and, consequently, the amount due under the Policy. Instead, AMI contends that the appraisal award did not discharge Nautilus's contractual obligations because the award "contains a gross mistake on its face." Resp. Mot. Summ. J. 23.

In most circumstances, awards pursuant to appraisal clauses conclusively determine the amount due under an insurance contract. *See Hetherington v. Cont'l Ins. Co. of N.Y.* 37 N.E.2d 366, 368 (Ill. App. Ct. 1941) ("[W]here an appraisal has been fairly conducted and is within the terms of the reference under which the controversy is submitted, the findings made by the appraisers in the absence of fraud or mistake will be binding upon the parties."). Because appraisal awards bind parties to the contract, they are "enforceable in a court of law in the same manner as an arbitration clause." *Travis v. Am. Mfrs. Mut. Ins. Co.*, 782 N.E.2d 322, 324 (Ill. App. Ct. 2002); *see also 70th Ct. Condo Ass'n v. Ohio Sec. Ins. Co.*, No. 16 CV 07723, 2016 WL 6582583, at *4 (N.D. Ill. Nov. 7, 2016) (describing appraisal clauses in Illinois as "analogous to arbitration clauses"). Consequently, when parties agree to a "binding" appraisal clause that purports to establish a conclusive procedure for valuing an insurance claim, they "foreclose[]

[their] opportunity to litigate the amount . . . owed" for damage under the policy.  *See 70th Ct. Condo Ass'n*, 2016 WL 6582583, at *5.

By the terms of their contract, AMI and Nautilus agreed that a decision by the appraisers would be "binding."  Commercial Lines Policy 80.  Accordingly, the appraisal procedure has power to conclusively determine the amount owed by the insurer.

Because the Appraisal Award is binding, it is entitled to substantial deference.  *See Bd. of Educ. of City of Chi. v. Gorenstein*, 534 N.E.2d 579, 582–83 (Ill. App. Ct. 1989) ("[A]ppraisers have wide discretion as to the methods and procedures they may follow in determining values."); *Herricane Graphics, Inc. v. Blinderman Constr. Co.*, 820 N.E.2d 619, 623 (Ill. App. Ct. 2004) ("[A] court must construe an [arbitration] award, if possible, so as to uphold its validity."); *Hayes v. Ennis*, 662 N.E.2d 910, 913 (Ill. App. Ct. 1996) ("If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact.  A contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation." (quotation marks omitted)). "A party does not get a 'do over' just because it disagrees with the method and conclusion that won two votes."  *70th Ct. Condo Ass'n*, 2016 WL 6582583, at *5.

Because of this substantial deference, an appraisal award can be overturned only in a limited set of circumstances.  First, "courts will set aside an award wherever it clearly appears that there has been fraud, misconduct or palpable or gross error or mistake."  *Hetherington*, 37 N.E.2d at 368.  A mere showing of error or mistake is not sufficient—the error must be "gross" for the court to overturn the award.  *See Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 692 N.E.2d 1167, 1171 (Ill. 1998) ("A long line of precedent has established that an arbitrator's

award will not be set aside because of errors in judgment or mistakes of law or fact."); *Sloan Elec. v. Pro. Realty & Dev. Corp.*, 819 N.E.2d 37, 43 (Ill. App. Ct. 2004) ("[A] court cannot overturn an award on the ground that it is illogical or inconsistent."). Second, a court may overturn an appraisal award if "all fair and reasonable minds would agree that the construction of the contract [by the arbitrator or appraiser] was not possible under a fair interpretation of the contract." *Rauh v. Rockford Prods. Corp.*, 574 N.E.2d 636, 643 (Ill. 1991). Finally, a court can vacate an award if it "fails to dispose of all matters properly submitted to the arbitrator." *Herricane Graphics, Inc. v. Blinderman Constr. Co.*, 820 N.E.2d 619, 624 (Ill. App. Ct. 2004). In any of these cases, "[t]he burden is placed on the challenger to prove by clear and convincing evidence that an award was improper." *Id.* at 624.

AMI claims that the appraisal award is grossly mistaken on its face because it failed to resolve questions presented by the Protocol. Resp. Mot. Summ J. 24. AMI specifically identifies the Protocol's direction for the appraisers to determine the Actual Cash Value ("ACV") and Replacement Cost Value ("RCV") of Roof 7. *Id.* It is true that the appraisal award did not include a line detailing the damage to Roof 7. *See generally* Appraisal Award, Mem. Supp. Mot. Summ. J. Ex. 9, ECF No. 45-9. However, this is not a gross mistake because the Protocol never went into effect. *See supra* section II(b)(i). Consequently, it was not an error to disregard its instructions to determine the ACV and RCV of Roof 7.

Insofar as AMI believes that, independent of the Protocol, it is a gross mistake to exclude Roof 7 from the award, this argument too fails. A court cannot overturn an error by the appraisers unless the mistake is on the face of the award. *See Spencer v. Ryland Grp., Inc.*, 865 N.E.2d 301, 304 (Ill. App. Ct. 2007) ("Even where an arbitrator commits gross errors of judgment in law or a gross mistake of fact, a court should not vacate an arbitration award unless

the mistakes or errors are apparent on the face of the arbitration award."); *Garver v. Ferguson*, 389 N.E.2d 1181, 1184 (Ill. 1979) ("[G]ross errors of judgment in law or a gross mistake of fact will not serve to vitiate an [arbitration] award unless these mistakes or errors are apparent upon the face of the award."); *Bd. of Ed. of City of Chi. v. Chi. Tchrs. Union, Loc. No. 1*, 427 N.E.2d 1199, 1202 (Ill. 1981) ("Only where it appears on the face of the award . . . that the arbitrator was so mistaken as to the law that, if apprised of the mistake, the award would be different may a court review the legal reasoning used to reach the decision."). As a result, "[i]n determining whether an award contains gross factual errors, [the Court] may not examine" extrinsic evidence such as that submitted to the arbitrator. *Sloan Elec.*, 819 N.E.2d at 45.

Even if there was a mistake here, it is not on the face of the award. The award says that all roofs were considered and those not listed did not suffer recoverable damage. *See* Appraisal Award 5. Such language suggests Roof 7 was, in fact, considered and found to not have recoverable damage. If the appraisers did neglect to consider Roof 7, it is not apparent from the face of the appraisal award.[4]

This case is similar to *Cabinet Distribution Center LLC v. SECURA Insurance Co.*, No. 24 C 673, 2024 WL 3950318 (N.D. Ill. Aug. 26, 2024). In that case, the court held there was no gross error on the face of an award when the award ordered only 125 of 600 squares to be replaced despite "sound roofing practices and manufacturer's specifications" requiring that all 600 be replaced. *Id.* at *3 (quotation marks omitted). The court declined to overturn the award because "even if the umpire erred, none of the[] alleged errors appear[ed] on the face of the . . .

---

[4] The evidence suggests Roof 7 was considered. The fact that it was not listed on the final award is because discussion between the appraisers led to its exclusion as they sought agreement on the final valuation. *See* Dep. Nicholas Vretis 75:10–77:9, Resp. Mot. Summ. J. Ex. 3, ECF No. 52-3 at 75–77. In any case, even if this is a factual question in dispute, it is not material because it does not change the result as it is not on the face of the award.

award." *Id.* at *4. The award showed only that 125 squares needed replacement, not that 475 were ignored. *Id.* Thus, extrinsic evidence would have been needed to prove any mistake. Similarly here, the award only shows that certain roofs need replacement, not that other roofs were ignored. Extrinsic evidence would be needed to prove that the appraisers made a mistake in excluding Roof 7, meaning any mistake is not on the face of the award.

Though AMI does not explicitly make this argument, out of an abundance of caution the Court also considers the argument that the Appraisal Award should be overturned because it does not address all the questions presented to the appraisers. As to such an argument, AMI would bear a high burden of proof. "There is a presumption that the arbitrator considered all claims, and the award need not show how each item of the parties' respective demands was resolved." *Sloan Elec.*, 819 N.E.2d at 46. Slight deviation from instructions is not enough to overturn the award. *See, e.g.*, *Herricane Graphics*, 820 N.E.2d at 625 (declining to overturn an arbitration award even though the arbitrator misinterpreted instruction provisions because the interpretation was "potentially reasonable").

In this case, AMI cannot overcome the presumption. It appears that the appraisers did consider the Protocol and the questions it posed. According to the Appraisal Award, "[t]he Appraisers have provided a duly executed Appraisal Award . . . pursuant to policy terms and conditions *as stated in the protocol*." Appraisal Award 5 (emphasis added). The appraisers merely answered some of the Protocol's questions in the negative. *See id.* ("Any roofs or rooms not listed did not sustain loss and damage from these 2 events.").

In sum, AMI does not present a triable question of fact regarding whether there are flaws in the appraisal award that merit reversal by the Court.

### iii.  The Additional Coverage Provision

14

AMI seeks up to $10,000 for increased cost of construction pursuant to the Additional

Coverage Provision of the Policy.  Resp. Mot. Summ. J. 28.  Nautilus claims that it is not liable

for this increased cost of construction because the Policy states that "[Nautilus] will not pay for

the Increased Cost of Construction . . . [u]nless the repair or replacement is made as soon as

reasonably possible after the loss or damage, not to exceed two years."  Commercial Lines

Policy 75; *see* Mem. Supp. Mot. Summ. J. 16–17.

According to Nautilus, the repair work was not completed until the summer of 2024, over

three years after the damage in 2020 and 2021.  Mem. Supp. Mot. Summ. J. 17.  AMI does not

contest either the date of the damage, *see* Resp. Mot. Summ. J. 8–9, or that the repairs were

performed more than two years after the damage, *see id.* at 2 (stating that AMI completed roof

repairs sometime after May 14, 2024).  AMI instead contends that Nautilus has waived this

Policy defense or should be estopped from asserting it.  Resp. Mot. Summ. J. 28.

An unambiguous contractual term, like the two-year provision, "will be applied as

written, unless it contravenes public policy."  *PQ Corp. v. Lexington Ins. Co.*, 860 F.3d 1026,

1030 (7th Cir. 2017) (quoting *Hobbs v. Hartford Ins. Co. of the Midwest*, 860 F.3d 1026, 1030

(7th Cir. 2017)).  Two narrow exceptions to this general rule are if waiver or estoppel apply.  *See*

*Downing v. Wolverine Ins. Co.*, 210 N.E.2d 603, 606 (Ill. App. Ct. 1965) ("[T]he policy

provisions ordinarily control, in the absence of waiver or estoppel.").

## 1.  Waiver

"Waiver is an equitable principle invoked to further the interests of justice whenever a

party initially relinquishes a known right or acts in such manner as to warrant an inference of

such relinquishment."  *Mollihan v. Stephany,* 368 N.E.2d 465, 470 (Ill. 1977).  It is

fundamentally about "an intentional relinquishment of a known right."  *Home Ins. Co. v.*

*Cincinnati Ins. Co.*, 821 N.E.2d 269, 282 (Ill. 2004); *accord In re Liquidation of Inter-Am. Ins. Co. of Ill.*, 768 N.E.2d 182, 193 (Ill. App. Ct. 2002).  As a result, waiver is "essentially unilateral in character, focusing on [the waiving party's] conduct, and requiring no prejudice to, nor detrimental reliance by" the other party.  *Safeway Ins. Co. v. Ebijimi*, 117 N.E.3d 1227, 1240 (Ill. App. Ct. 2018) (quotation marks omitted).

Waiver can be express or implied, but in either case it must "arise[] from an affirmative act."  *PQ Corp.*, 860 F.3d at 1036 (quotation marks omitted).  AMI alleges no express waiver of the two-year provision, so the Court considers only whether Nautilus has impliedly waived its contractual rights.  "In the insurance field, waiver is generally not 'expressed or intentional' but usually is implied from the conduct of the insurer or its agents."  *Mollihan,* 368 N.E.2d at 470.  "An implied waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it."  *Home Ins. Co.*, 821 N.E.2d at 282.

The party claiming a contractual provision has been waived "has the burden of proving a clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights."  *PQ Corp.*, 860 F.3d at 1036 (quoting *In re Nitz*, 739 N.E.2d 93, 103 (Ill. App. Ct. 2000)).  "Although strong proof is not required to establish a waiver of a policy defense, such facts must be shown as would make it unjust, inequitable or unconscionable to allow the defense to be interposed."  *Mollihan*, 368 N.E.2d at 471.  This is generally a fact-intensive question, but "when the material facts are undisputed and only one reasonable inference may be drawn from them, waiver and estoppel may be determined as a matter of law."  *Lumbermen's Mut. Cas. Co. v. Sykes*, 890 N.E.2d 1086, 1098 (Ill. App. Ct. 2008); *accord Home Ins. Co.*, 821 N.E.2d at 282.

AMI puts forward several actions by Nautilus that it argues manifest an intention to waive the two-year provision.  These include: Nautilus ignoring AMI's initial appraisal demand,

16

Nautilus taking an excessive amount of time to agree to the terms of the Protocol, extended non-responsiveness from Nautilus's chosen appraiser, and Nautilus's failure to pay the funds necessary to repair the Property until four years after the date of loss. Resp. Mot. Summ. J. 28. Each of these boils down to the same basic argument: throughout the entire claim-settlement process, Nautilus intentionally drew out the time necessary to settle AMI's claim. AMI claims that this is incompatible with an intent to enforce the two-year provision and that it would be unjust to allow Nautilus to do so after causing the delay. *Id.* at 29.

In this case, Nautilus did not waive the two-year provision. Drawing out the claim settlement process, without more, is not inconsistent with an intent to retain its right to the two-year policy defense. Conducting negotiations can constitute waiver when doing so "lulls the insured into a false security calculated to cause delay in bringing the action" and thereby causes the insured to miss the contractual deadline for filing a claim. *Tibbs v. Great Cent. Ins. Co.*, 373 N.E.2d 492, 494 (Ill. App. Ct. 1978). There is no reason to believe this is true here. On the contrary, AMI appeared to know during the settlement process that its right to recover under the contract would be impacted by delaying repairs to the property. *Cf.* Am. Count III 3 (alleging in October 2022, within two years of the ice damming event, that Nautilus's appraiser engaged in delay "in an effort to run out the clock on AMI's right to file suit against Nautilus under the Policy"). This suggests that Nautilus's action, whatever its intent, did not have the effect of lulling AMI into a false sense of security. Instead, it put them on notice of the need for haste.

In any case, Nautilus never made a representation, express or implied, to AMI that the two-year condition would not prevent recovery. Conversely, during negotiations regarding the appraisal procedure, Nautilus maintained that the two-year provision would be enforced. *See* Stipulated Protocol 4 ("With respect to the Increased Cost Of Construction Additional Coverage,

the Nautilus Policy provides that there is no obligation to pay for the Increased Cost of

Construction . . . unless the repair or replacement is made as soon as reasonably possible after the

loss or damage, not to exceed two years."). Similarly, when accepting the appraisal demand,

Nautilus specifically stated that it "[did] not waive any policy coverages, limitations, exclusions,

conditions, provisions and policy limits." Appraisal Acceptance, Mem. Supp. Mot. Summ. J. Ex.

G, ECF No. 45-7. Such reservations of rights are further evidence that Nautilus did not waive

the two-year provision. *Lumbermen's Mut. Cas. Co.*, 890 N.E.2d at 1100.

In short, AMI's points to no evidence of any representation by Nautilus that manifests an

intent to waive the two-year deadline.

### 2. Estoppel

> To establish equitable estoppel, the party claiming estoppel must demonstrate that:
> (1) the other party misrepresented or concealed material facts; (2) the other party
> knew at the time the representations were made that the representations were
> untrue; (3) the party claiming estoppel did not know that the representations were
> untrue when the representations were made and when they were acted upon; (4) the
> other party intended or reasonably expected the representations to be acted upon by
> the party claiming estoppel or by the public generally; (5) the party claiming
> estoppel reasonably relied upon the representations in good faith and to their
> detriment; and (6) the party claiming estoppel has been prejudiced by his reliance
> on the representations.

*Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000). The party claiming estoppel need not prove

that the other party intended to mislead or deceive—"it is sufficient that a fraudulent or unjust

effect results from allowing another person to raise a claim inconsistent with his or her former

declarations." *In re Scarlett Z.-D.*, 28 N.E.3d 775, 785 (Ill. 2015). "The test is whether,

considering all the circumstances, conscience and the duty of honest dealing should deny one the

right to repudiate the consequences of his or her representations or conduct." *Id.* "The party

claiming estoppel has the burden of proving it by clear and convincing evidence." *Id.*

18

In this case, AMI's estoppel and waiver arguments are based on the same facts, *see* Resp. Mot. Summ. J. 28–29, and are doomed for the same reason. Nautilus made no representation and engaged in no conduct suggesting estoppel is appropriate. It never sought to hide the existence of the two-year restriction, claimed it did not exist, or suggested that Nautilus would not seek to enforce it. The lack of representation—express or implied—suggesting that the two-year requirement would not bind AMI means Nautilus is not estopped from asserting this Policy defense.

In sum, the two-year provision remains binding under the terms of the Policy, so AMI cannot recover under the Additional Coverage Provision. Because the Appraisal Award disposed of Nautilus's remaining obligations under the Policy and because the Stipulated Protocol never became effective, Nautilus's summary judgment motion is GRANTED as to Count II.

### c. Count III: 215 ILCS 5/155

In Count III, AMI seeks relief pursuant to Section 155 of the Insurance Code, 215 ILCS 5/155. *See generally* Am. Count III. Section 155 provides in relevant part:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts . . . .

215 ILCS 5/155(1). AMI contends that Nautilus engaged in bad faith during the claim investigation and settlement process and that Nautilus unreasonably delayed settlement of the claim to escape from liability under the Additional Coverage Provision. Am. Count III 1–2.

No matter what the validity of its claim that Nautilus's actions were "vexatious and unreasonable," 215 ILCS 5/155(1), AMI cannot prevail on this claim because Section 155 "does

19

not create a cause of action." *Hennessy Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 770 F.3d 676, 679 (7th Cir. 2014). Section 155 was designed to create an exception to the general rule that attorney's fees and punitive damages are not available in breach of contract actions. *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 901 (Ill. 1996). As such, it allows recovery of these additional sums only when brought jointly with an independently meritorious breach of contract action. *See Burton Wells, Ltd. v. Indian Harbor Ins. Co.*, No. 08 C 4946, 2009 WL 8463694, at *2 (N.D. Ill. July 13, 2009) ("Under Illinois law[, referring to Section 155], Plaintiff must first establish that it is entitled to coverage before it can prove that Defendant acted in bad faith."); *see also O'Rourke v. Access Health, Inc.*, 668 N.E.2d 214, 222 (Ill. App. Ct. 1996) ("[D]efendant could not have committed the vexatious and unreasonable conduct necessary for section 155 relief where, as here, no benefits are owed."); *Martin v. Ill. Farmers Ins.*, 742 N.E.2d 848, 858 (Ill. App. Ct. 2000) ("As defendants owed no further benefits to plaintiff under their respective policies, defendants could not have committed the vexatious and unreasonable conduct necessary for section 155 relief.").

AMI notes that Illinois courts require one of three threshold issues to be unresolved in order to prevail under Section 155, Resp. Mot. Summ. J. 31: "(1) the insurer's liability under the policy, (2) the amount of the loss payable under the policy, or (3) whether there was an unreasonable delay in settling a claim," *Creation Supply, Inc. v. Selective Ins. Co. of the Se.*, 995 F.3d 576, 578 (7th Cir. 2021). According to AMI, it remains undecided "whether there was an unreasonable delay in settling a claim," *id.*, meaning its Section 155 claim can proceed on those grounds. Resp. Mot. Summ. J. 31. AMI misreads *Creation Supply* and Section 155. *Creation Supply* maintains that a Section 155 action cannot be a standalone action; it must accompany another claim. *Creation Supply*, 995 F.3d at 582. In describing the issues that must remain

undecided, it narrows rather than expands the availability of Section 155 actions. It specifies that "not *all* breach-of-contract claims permit an accompanying Section 155 claim[,] [j]ust those for which one of [the] three issues remains undecided." *Id.* (quotation marks omitted). That is, an independent action in which one of the three threshold issues remains must be pending for AMI to succeed on its Section 155 claim.

Because AMI does not have an actionable breach-of-contract claim, it cannot succeed on its claim under Section 155.

## CONCLUSION

Accordingly, Nautilus Insurance Company's Rule 56 Motion for Summary Judgment, ECF No. 44, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 5th day of November, 2025.

s/ Sara Darrow

SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE